AO 91 (Rev. 11/11) Criminal Complaint AUSA Jonathan L. Shih (312) 353-5361

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v. CASE NUMBER: 23 CR 573

JOSHUA FRISON

23CR573-1 FILED 10/26/2023 THOMAS G. BRUTON CLERK, U.S. DISTRICT COURT JH

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT ONE

On or about October 25, 2023, at Evergreen Park, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 2113(a) and 2 | by force and violence or by intimidation, took from the person or presence of another, money in the care, custody, control, management, or possession of the Scott Credit Union, the accounts of which are insured by the National Credit Administration Board; and possessed a firearm which has had the importer's or manufacturer's serial number obliterated, and has, at any time, been shipped or transported in interstate or foreign commerce |

### COUNT TWO

On or about October 25, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 922(k) | knowingly possessed a firearm which has had the importer's or manufacturer's serial number obliterated, and has, at any time, been shipped or transported in interstate or foreign commerce |

This criminal complaint is based upon these facts:

_X_ Continued on the attached sheet.

<u>Michael Ganley by MV</u>
MICHAEL GANLEY
Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: <u>October 26, 2023</u>

*Judge's signature*

City and state: <u>Chicago, Illinois</u>        <u>MARIA VALDEZ, U.S. Magistrate Judge</u>
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, MICHAEL GANLEY, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed since January 2020. My current responsibilities include the investigation of violent crimes, including, among others, kidnaping, bank robbery, and the apprehension of violent fugitives.

2. This affidavit is submitted in support of a criminal complaint alleging that JOSHUA FRISON has violated Title 18, United States Code, Sections 2113(a) and 2; and 922(k). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging FRISON with bank robbery; brandishing a firearm in furtherance of a crime of violence; and possession of a firearm with an obliterated serial number, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts

that I believe are sufficient to establish probable cause to believe that FRISON has committed violations of Title 18, United States Code, Sections 2113(a) and 2; and 922(k)

4. On October 25, 2023, the Scott Credit Union located at 9059 S. Kedzie Ave., Evergreen Park, Illinois was robbed. Based on interviews of witnesses conducted by members of FBI and the Evergreen Park Police Department ("EPPD"), as well as a review of security footage from the bank, at approximately 9:17 AM, one black male individual wearing sunglasses, a surgical facemask, a brown baseball-style hat, a black jacket that reads "officer" on the back with an American flag on one sleeve, and the word "APD" on the left shoulder, a black hood, black pants, and brown work boots.

5. The individual approached one of the tellers ("Victim-1"), grabbed her by the waist, removed a firearm from his waistband area, pointed it at Victim-1 and demanded money. According to witnesses at the bank, the individual stated in sum and substance that he wanted larger denomination bills instead of smaller ones. Another teller ("Victim-2") approached the individual, and the individual handed Victim-2 a black plastic trash bag and instructed Victim-2 to put money into the trash bag. Victim-2 placed money into the trash bag. During the interaction the firearm was visible.

6. The individual then approached another teller ("Victim-3") and instructed her to provide additional money. Victim-3 provided money to the individual. The individual also stated, in sum and substance, that she was moving

2

too slow and that she should hurry up. Victim-3 provided additional money to the individual. Subsequently, the individual stated in sum and substance that he wanted to get into the vault. During this interaction, the firearm was visible.

7. Victim-2 walked to the door adjacent to the safe and knocked on the door. At that point, the individual fled the bank on foot.

8. In total, the individual stole approximately $18,000 from the Scott Credit Union. Based on records provided by Scott Credit Union, the deposits of the Scott Credit Union were insured by the National Credit Union Administration Board on October 25, 2023.

9. A witness outside the bank saw an individual fitting the description of the person who robbed the bank fleeing on foot. The individual jumped into one of the rear doors of a white van. The witness followed the van in the witness's vehicle to the area of W. 85th Street and California Avenue, at which point the witness lost sight of the van heading north on California Avenue. The witness called the Evergreen Police Department to report the incident, and they were interviewed by the Evergreen Police Department. The witness wished to remain anonymous, but his telephone number is known to the Evergreen Police Department.

10. Security footage from a business showed the van leaving the area of the bank and captured the license plate, which at that time, was a dealer license plate bearing DL2015AH. The video also showed a distinctive pattern of missing paint on the rear and side of the van.

11. I have reviewed security video from a security camera located in the vicinity W. 89th Street and California Avenue, Evergreen Park, Illinois, which showed a van with the same distinctive pattern of missing paint driving in that area at 9:20 AM. That location is a few blocks away from Scott Credit Union. Additionally, the video showed the driver, who was a black male with a grey beard.

12. I have reviewed Chicago Police Department ("CPD") POD cameras for October 25, 2023. At approximately 9:29 AM, a camera located in the vicinity of 87th Street and Ashland Avenue, Chicago (which is an approximately 8 minute drive from the Scott Credit Union), captured the van with a new Illinois license plate (3634454B) attached. The van was identified based on the same distinctive missing paint pattern, and it was traveling east on W. 87th Street.

13. Additional POD cameras showed the path of travel of white van, including traveling east on W. 87th Street., traveling in the vicinity of S. Corliss Ave. and E. 103rd Street, and in the area of E. 103rd Street and Cottage Grove.

14. Later on October 25, 2023, at approximately 1:30 PM, agents conducted surveillance in the vicinity of 535 E. 102nd Street, Apartment 107, Chicago, Illinois, which (as detailed below) is FRISON's Residence ("FRISON's Residence"). Agents observed the van parked on E. 102nd Street in front of FRISON's Residence.

15. Records from the Illinois Secretary of State show that the van is registered to FRISON and is a white 2007 Chevrolet cargo van. Additionally, driver's license records for FRISON show that he resides at FRISON's Residence. I have compared a copy of FRISON's driver's license photograph with the security footage

4

from the area of W. 89th Street and California Avenue, and the appearance of the driver of the van is consistent with FRISON.

16. On the evening of October 25, 2023, FBI executed a federal search warrant at FRISON's Residence. There were no individuals located inside FRISON's Residence at the time, however, as agents were executing the search warrant, FRISON arrived at the residence. FRISON was carrying several shopping bags with retail items. Based on review of the receipts inside the bag, the items were paid for with cash and were approximately $700 in total.

17. Inside FRISON's Residence, agents recovered, among other things, the following items: (1) one Mossberg 20 gauge Maverick Arm Model 88 shotgun with an obliterated serial number inside the living room; (2) one Smith and Wesson M&P 9C 9mm firearm with an obliterated serial number inside the living room; (3) bulk cash of a currently-unknown quantity; and (4) one trash bag consistent with the appearance of the black trash bank used by the individual inside Scott Credit Union during the robbery. Agents were unable to read the serial numbers on either of the firearms. However, I know, based on my training and experience, that Mossberg and Smith and Wesson do not manufacture firearms in the state of Illinois, and therefore, the Mossberg shotgun and the Smith and Wesson firearm traveled in interstate commerce prior to October 25, 2023.

18. After providing FRISON with *Miranda* warnings, agents conducted an interview of FRISON. The following is a summary of some of the statements made by FRISON during the interview, and is not a complete transcription of all

5

information provided by FRISON. Earlier that day, FRISON drove his work van, a Chevrolet cargo van, with two other individuals ("Robber-1" and "Robber-2") to the Scott Credit Union. FRISON parked the van in the alley behind the credit union. According to FRISON, Robber-2 ran into the bank, and then a short time later ran out of the bank and got back into the van. At that time, Robber-2 had his face covered with sunglasses and was wearing a baseball hat and a hooded jacket. After Robber-2 got into the van, FRISON drove away. FRISON claimed that before Robber-2 returned to the vehicle, he did not know that Robber-1 and Robber-2 planned to commit a robbery of the credit union.

19. At another location, FRISON stopped the van, Robber-2 got out of the van, changed the license plate, and got back in. FRISON, Robber-1 and Robber-2 then went to FRISON's Residence. Robber-2 left the Smith and Wesson firearm at FRISON's Residence and told FRISON that he would come back for it at a later date. The Smith and Wesson was the firearm used during the bank robbery. FRISON handled the Smith and Wesson firearm on that day because at some point Robber-2 dropped the gun. FRISON received approximately $5,000 from the proceeds of the robbery, and the cash found in his residence was the proceeds of the bank robbery. The merchandise that FRISON purchased that day was purchased using proceeds from the bank robbery. The remainder of the proceeds were split between Robber-1 and Robber-2.

20. FRISON also admitted that the Mossberg shotgun was his, which he previously purchased. FRISON scratched the serial number off the shotgun, and

FRISON knew that it was a crime to do so. FRISON defaced the serial number because he planned to use it on an individual who had hurt one of FRISON's family members, and FRISON planned to then dispose of the gun.

21. I know, based on my training and experience, that individuals involved in bank robberies are unlikely to involve unnecessary individuals in the robbery, as doing so would increase the chance of detection by law enforcement and increase the number of witnesses to the crime. Consequently, I believe it is unlikely that, as FRISON claimed, there were three individuals involved in the bank robbery, as under his explanation, Robber-1 played virtually no role in the robbery. I believe it is more likely FRISON was attempting to minimize Robber-1's role in the offense, and that in fact, Robber-1 was the person who entered the Scott Credit Union. Additionally, I know based on my training and experience that it is unlikely that a getaway driver in a bank robbery would be likely to have no knowledge of the robbery prior to its occurrence, particularly where the driver received a significant amount of the

proceeds of the robbery afterwards. In my training and experience, participants in a bank robbery commonly plan the details of the robbery, including the roles that various individuals will play, prior to executing the robbery.

FURTHER AFFIANT SAYETH NOT.

Michael Ganley by MV
MICHAEL GANLEY
Special Agent, Federal Bureau of Investigation

SWORN TO AND AFFIRMED by telephone October 26, 2023.

_____
Honorable MARIA VALDEZ
United States Magistrate Judge